UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
XHEVAT G.,                                              :
                                                        :      **RULING & ORDER ON**
              Plaintiff,                                :      **PLAINTIFF'S MOTION**
                                                        :      **TO REVERSE OR**
       -against-                                        :      **REMAND AND**
                                                        :      **DEFENDANT'S MOTION**
FRANK BISIGNANO,                                        :      **TO AFFIRM DECISION**
Commissioner of Social Security,[1]                     :      **OF COMMISSIONER**
                                                        :
              Defendant.                          x     3:24-CV-1671 (VDO)
------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Xhevat G.[2] commenced this action against the Commissioner of Social Security ("Defendant" or "Commissioner"), challenging the decision of the Commissioner that Plaintiff does not qualify for Disability Insurance Benefits ("DIB"). The parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[3]

After considering the submissions, for the reasons set forth below, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

**I.    BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in both Plaintiff's Memorandum in Support of his Motion for an Order Reversing the Decision of the Commissioner and Defendant's Memorandum in Support of his Motion for an Order

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Frank Bisignano for Martin O'Malley in this action.

[2] Plaintiff is identified by his first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

[3] ECF Nos. 14, 17.

Affirming the Commissioner's Decision. The Court adopts and incorporates both statements of fact by reference.

In January 2022, Plaintiff applied for a period of DIB.[4] After Plaintiff's claim was denied, Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ").[5] Plaintiff, his representative (Olia Yelner), and an impartial vocational expert (Amy Leopold) participated in a telephonic hearing before an ALJ (Judge Matthew Kuperstein) on September 5, 2023.[6]

On November 9, 2023, the ALJ issued a decision, finding Plaintiff not to be disabled under sections 216(i) and 223(d) of the Social Security Act.[7] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work under 20 C.F.R. § 404.1567(b) with certain limitations.[8] The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[9] The Appeals Council denied Plaintiff's request for review.[10]

---

[4] Certified Administrative Record ("R.") at 10. "R." refers to the Certified Administrative Record filed at ECF No. 11. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

[5] *Id.* at 85, 123.

[6] *Id.* At 10, 20.

[7] *Id.* at 20.

[8] *Id.* at 14.

[9] *Id.* at 20.

[10] *Id.* at 1.

Plaintiff filed the instant action on October 20, 2024.[11] Pending are the parties' cross-motions to reverse and to affirm the Commissioner's decision.[12]

## II.   LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

To be disabled, thus qualifying a claimant to benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical

---

[11] Compl., ECF No. 1.
[12] ECF Nos. 14, 17.

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Id.* at 71 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III. <u>DISCUSSION</u>

In challenging the ALJ's final decision that Plaintiff was not entitled to DIB, Plaintiff raises the following arguments: (1) the ALJ erred in assessing the credibility of the evidence by discounting Plaintiff's assertions of pain,[13] and (2) the ALJ erred when making the RFC

---

[13] Pl. Mem. at 23–25.

4

determination.[14] As elaborated below, the Court concludes that the administrative decision is supported by substantial evidence.

        A.      **The ALJ's Did Not Err in Determining Credibility**

Plaintiff asserts that the ALJ's credibility determinations in evaluating Plaintiff's pain were erroneous. Specifically, Plaintiff argues that the ALJ should have given more credence to Plaintiff's complaints of pain and that the ALJ minimized or omitted findings from the medical record.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citations omitted); *see also* 20 C.F.R. §416.929. Specifically, "the ALJ must consider 'the extent to which [the plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Genier*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1529(a)).

Plaintiff first challenges the ALJ's decision to consider the fact that Plaintiff walks every day for exercise in challenging Plaintiff's credibility. Notably, the ALJ found that Plaintiff's daily activities are more varied than one would expect given his allegation of disability and that treatment notes showed Plaintiff walking for exercise on a daily basis.[15] But it is within the province of the ALJ to consider a claimant's daily activities as a factor in

---

[14] *Id.* at 25–30.

[15] R. at 16

5

evaluating a party's reported pain. *See* 20 C.F.R. §416.929(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities"); *see also* 20 C.F.R. § 404.1529(c)(3) (a claimant's "pattern of daily living" is an "important indicator of the intensity and persistence of [the claimant's] symptoms"). And it is appropriate for the ALJ to rely upon Plaintiff's treatment notes. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that the ALJ could rely on treatment notes to formulate the RFC). Thus, the ALJ did not err in considering Plaintiff's walks, which was done at the recommendation of his treatment providers, as it was pertinent to the ALJ's conclusion.

Next, Plaintiff argues that the ALJ erred in characterizing Plaintiff's treatment as "routine and conservative in nature," as the ALJ focused on the less restrictive findings in the record, like normal gait and strength, and ignored the Plaintiff's ongoing pain. It falls to the ALJ to determine the weight assigned to the evidence and to resolve any conflict in the medical evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). And "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Rubin v. O'Malley*, 116 F.4th 154, 155 (2d. Cir. 2024) (citations and quotation marks omitted).

Here, the record here shows that the Commissioner's conclusions about the medical record must be upheld, as Plaintiff does not show that the ALJ "disregarded or misconstrued relevant evidence" in evaluating Plaintiff's subjective reports of pain. *Id.* The ALJ based his determination on medical records related to Plaintiff's complaints of pain, including during the period after July 2020, when Plaintiff's back pain purportedly exacerbated. To illustrate, the ALJ acknowledged that Plaintiff's treatment notes revealed a laminectomy surgery in July 2020, that Plaintiff's pain returned about six months after his surgery, and that, as a result of

6

the pain, Plaintiff testified that he could not lift more than five pounds, walk longer than 10 or 20 minutes, and sit or stand more than a bit.[16] The ALJ also noted that, in October 2021, Plaintiff underwent an L4-5 interlaminar injection and reported improvement in his pain.[17] The ALJ further noted that, while Plaintiff experienced back pain in 2022 and moderate lumbar spine pain in 2023, Plaintiff's gait was intact and his lower extremity strength was normal.[18] Thus, a rational interpretation of Plaintiff's treatment record reveals that Plaintiff improved shortly after his July 2020 back surgery and, while there was some evidence of exacerbation around July 2022, the record shows Plaintiff having an intact gait and lower extremity strength. This is wholly consistent with the ALJ's determination that any "functionally limiting effects of [Plaintiff's] symptoms are not supported by the objective medical evidence in the records. The claimant's intact gait and strength support the range of light work herein."[19]

Accordingly, the ALJ's evaluations of Plaintiff's complaints of pain and other symptoms are supported by substantial evidence.

### B. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Could Perform Light Work Pursuant to 20 C.F.R. § 404.1567(c).

#### 1. The ALJ Properly Consider Plaintiff's Physical Impairments

As to the RFC, Plaintiff first argues that the ALJ ignored Plaintiff's physical symptoms that prevent his ability to consistently perform the necessary demands of light exertion.

---

[16] *Id.* at 15–16.

[17] *Id.*. at 16.

[18] *Id.*

[19] *Id.*. at 15

7

Specifically, Plaintiff asserts that the RFC overlooked Plaintiff's chronic pain and difficulties with standing, walking, and sitting.[20]

Between steps three and four, an ALJ determines "whether, despite the claimant's severe impairment, he . . . has residual functional capacity to perform his . . . past work." *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir. 1998)). The RFC "is what the claimant can still do despite the limitations imposed by his impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). An ALJ makes an RFC determination "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(1), (3). The RFC, however, need not "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

The ALJ here found that Plaintiff could perform "light work" as defined in 20 C.F.R. § 404.1567(b).[21] The ALJ limited Plaintiff to "lifting or carrying or pushing or pulling 20 pounds occasionally and 10 pounds frequently; to standing or walking with normal breaks for a total of six hours in an eight-hour workday; and to sitting with normal breaks for a total of six hours in an eight-hour workday."[22] In addition, the ALJ limited Plaintiff to "only frequent

---

[20] Pl. Mem. at 26–28.

[21] R. at 14.

[22] *Id.*

climbing of ramps or stairs, kneeling, or crouching; and to only occasional climbing of ladders, ropes, or scaffolds, stooping or crawling."[23]

"Even if there were evidence in the record supporting a more restrictive RFC, the relevant question is whether substantial evidence supports the ALJ's decision." *Langston v. Comm'r of Soc. Sec.*, No. 21-CV-00723 (KAM), 2024 WL 127850, at *11 (E.D.N.Y. Jan. 11, 2024) (cleaned up). Here, a reasonable factfinder could properly arrive at the same RFC conclusion because substantial evidence supports the ALJ's conclusion that Plaintiff could perform light work despite the complaints of chronic pain. In reaching the RFC finding, as previously discussed, the ALJ first relied upon Plaintiff's treatment notes, as is permitted. Regarding Plaintiff's physical impairments, the ALJ found that treatment notes from July 2020 show that Plaintiff engaged in physical therapy after his back surgery and, in October 2020, Plaintiff had some ongoing back pain but no leg symptoms.[24] And contrary to Plaintiff's assertion that the ALJ did not take into account his complaints of pain, the ALJ acknowledged that Plaintiff complained that his pain returned after his surgery and that, as a result of the pain, Plaintiff testified that he could not lift more than five pounds, walk longer than ten or twenty minutes, and sit or stand more than a bit.[25] The ALJ also reviewed evidence regarding Plaintiff's back pain from 2021, 2022, and 2023 to support the conclusion that, "[o]verall, the claimant's testimony is inconsistent with and unsupported by the medical evidence of record."[26]

---

[23] *Id.*

[24] *Id.* at 15.

[25] *Id.*

[26] *Id.* at 16.

### 2. The ALJ Properly Considered the Medical Opinion Evidence

Finally, Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence and challenges the findings that Dr. Marcus's opinion was not persuasive, Dr. Brady's opinion was not persuasive, and that the State Agency medical doctors' opinions were persuasive. [27]

For claims filed on or after March 27, 2017, as here, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ will consider a medical opinion and any prior medical finding by evaluating the following factors: **(1)** supportability; **(2)** consistency; **(3)** the medical professional's relationship with the claimant, including: (i) the length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; **(4)** the medical professional's specialization; and **(5)** other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the SSA disability program's policies and evidentiary requirements. *Id.* § 416.920c(c). "[W]hen 'evaluating the persuasiveness of medical opinions and prior administrative medical findings,' the 'most important factors . . . are supportability . . . and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *1 (2d Cir. June 17, 2022) (quoting 20 C.F.R § 404.1520c(a)). Therefore, the ALJ must "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision."

---

[27] Pl. Mem. at 29–30.

*Id.* § 404.1520c(b)(2). "The ALJ may also, but is not required to, explain the third, fourth, and fifth factors[,]" which include the medical professional's relationship with the claimant, the medical professional's specialization, and other evidence. *Ashleigh L. v. Kijakazi*, No. 3:22-CV-675, 2023 WL 6357000, at *7 (D. Conn. Sept. 29, 2023) (citing 20 C.F.R § 416.920c(b)(2)).

After careful consideration of the record, including the ALJ's decision and the medical evidence, the Court finds that the ALJ's decision includes a proper evaluation of the medical opinions at issue. **First**, substantial evidence supports the ALJ's evaluation of the opinion of Dr. Marcus, which found the statement indicating Plaintiff was permanently disabled or unable to work is not a medical opinion. The regulation provides:

> (2) Medical Opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations in the following abilities…
>
> (i.) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical function (including manipulative or postural functions such as reaching, handling, stooping, or crouching);

20 C.F.R. § 404.1513(a)(2)(i). And here, Dr. Marcus did not provide a statement about what Plaintiff could do despite the impairments or about Plaintiff's physical functions.

**Second**, substantial evidence supports the ALJ's weighing of the opinion of Dr. Brady, who noted that:

> on exam, [Plaintiff] has some moderate pain with mild restricted range of motion of lumbar spine…Progression of mild-to-moderate central and moderate foraminal stenosis L4-5, metal artifact right-sided L4-S. Review of radiographs today demonstrates pathologic post-laminectomy instability L3-4 with greater than 12° of motion in flexion-extension. Moderate to severe degenerative collapse, L4-5.[28]

---

[28] *Id.* at 29.

In 2022, Dr. Brady also concluded that Plaintiff has had an aggressive laminectomy and has post-laminectomy instability and progression of his disease.[29] But, much like Dr. Marcus's findings, Plaintiff's recitation of Dr. Brady's findings does not show any assessment of Plaintiff's ability to do physical activities, such as sitting, standing, and walking. Therefore, Plaintiff's argument on this ground must be rejected.

**Third,** the ALJ properly evaluated the State Agency medical doctors' physical RFC opinions that Plaintiff could perform light work with postural limitations, finding them to be persuasive.[30] Regarding supportability, the ALJ explained that these opinions were persuasive "because the level of ongoing residual functional capacity limitations during the period at issue are generally supported by the related internal analysis."[31]  And as to consistency, the ALJ found that the limitations described by the Agency's doctors "were generally consistent with the objective medical evidence of record when they were made and have remained generally consistent with the medical treatment notes[,]" stating that, in 2023, while Plaintiff reported moderate lumbar spine pain, Plaintiff's gait was intact and Plaintiff's lower extremity strength was normal despite Plaintiff having pain with motion.[32]

Accordingly, the ALJ's RFC determination is supported by substantial evidence.

## IV.  CONCLUSION

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 17) and **denies** Plaintiff's motion to reverse or remand the Commissioner's decision (ECF No. 14).

---

[29] R. at 989–90.

[30] R. at 17.

[31] *Id.*

[32] *Id.*

The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
November 10, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge